[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The motion before the court is one for the construction of language in a separation agreement approved by this court and incorporated as part of its judgment in July of 1987. The language in question is:
 The plaintiff shall be responsible for the expenses of up to four years of college for each of the children, but said obligation' shall not continue past each child reaching the age of 25. CT Page 3023
This provision was a modification of an earlier stipulation approved by the court at the time of the dissolution of the marriage in 1983. In the earlier stipulation, the plaintiff's obligation was limited to the age of majority of the children, which was then 18, as follows: "the husband shall be responsible for the continued education of the children until they have graduated from college or have reached the age of majority."
In that original decree, the defendant was given the right to visit the marital home and, in effect, care for the children daily which she did. This appeared to have worked amicably enough until March of 1987 when the plaintiff advised the defendant of his intent to remarry, to buy another house and to sell the marital home.
The defendant wished to have daily access to the children in the plaintiff's new home. The plaintiff objected and a series of motions and counter motions were filed beginning with a motion for sole custody filed by the defendant. The other motions concerned selling the house, exclusive possession of the house, purchase of a new house, etc.
Following the decision on the motion for custody, the defendant received physical custody of the children with joint legal custody continuing. She also received child support for each minor child, to wit: Michael and Jennifer in the amount of $833.00 per month.
At the time of the stipulation in question, the oldest son, David, was entering Green Mountain College in Vermont. The decision to enter this college was made by the plaintiff after discussion with David. While the plaintiff preferred David to go to a state college or university as he had done, the decision to permit David to go to a private college out of state was made because David had been in difficulty with the law resulting in his confinement in Cheshire for two months in the summer of 1987. Green Mountain was not David's first choice but he agreed with his father to attend. The plaintiff paid all of the expenses of Green Mountain College for a period of two years.
At the end of the two years, David, who had done very well at Green Mountain, either first or second in his class, wanted to transfer to Boston University. The plaintiff opposed this move in the main because of the additional expense involved. Boston University's cost was $20,000.00 while Green Mountain had been $11,000.00 per year. The defendant concurred with David's desire to transfer to Boston University, and when the plaintiff refused to pay the cost or agree to the transfer, CT Page 3024 she put up the money for the transfer and she has been, as of the time of the trial, financing David's college expenses.
At the time of the trial, also, Michael, the younger son, was about to enter college in September of 1990. He had discussed with his father his choice of college which was Berklee in Boston. His father testified that he objected strongly to this choice because he did not consider Berklee to be a college as he understood the term. Berklee specializes in music and Michael is a musician. Berklee also had a cost of $15,000.00 which, again, was more than had been paid by the plaintiff for Green Mountain.
Again, the plaintiff asserts that he prefers the children to go to state colleges because they are less expensive and it would appear that while his major objection to both youngsters' college choices is money there was also his objection to the kind of college Berklee was and is. It was not clear at the time of the trial in this matter whether Michael was going to be able to go to Berklee since the plaintiff was refusing to pay for it and the defendant had not yet agreed to do so. The defendant did, however, approve the choice of the college for Michael.
The plaintiff did offer to pay part of the costs for David, about $9,000.00, but refused to pay anything for Michael because he disapproved of the college.
Up until the time that David wanted to transfer to Boston University, the defendant had little to say about the choice of colleges. She said she felt her husband's educational background was far superior to her's and she "left it to Jerry's [the plaintiff] area." (Transcript, p. 54.)
Compounding the problem is the fact that since the plaintiff's remarriage and the transfer of physical custody to the defendant, the relationship between the plaintiff and the children has deteriorated. This makes the chance of agreement on choosing colleges difficult if not impossible.
This interpretation "requires a determination of the intention of the parties as manifested by their words and conduct." See Heyman v. CBS, Inc., 178 Conn. 215 at p. 228. In this case the conduct of the parties consisted of the choice of David's college being made by the father with little or no input from the plaintiff and with David's input consisting mostly of an acquiesence in his second choice. Since this was at the time that the modification was entered into in July of 1987, it would seem that the parties were at that point interpreting the provision in question to mean that the plaintiff had the CT Page 3025 ultimate decision on the choice of colleges.
Moreover, it is clear that since that time the relationship between the plaintiff and defendant has deteriorated so that there was little or no communication between them and this in turn provided the basis for this present conflict.
This is not a situation where there was only one college available to either child. The only evidence even suggesting this was the evidence of the defendant that Berklee had a good reputation for its music specialty. Nor was there any attempt to show that Boston University was the only university which could provide the business courses that David wanted. In fact, David did not even testify.
While it is clear that both parties wished the children to attend college, it is not clear that they wished them to attend any college that the children chose regardless of the parents' belief in the suitability of the colleges or in its costs.
Under all the circumstances, the court finds that the provision in question means that the plaintiff has the ultimate decision as to the choice of the college under the present circumstances. The court, therefore, will not consider any of the other prayers for relief of the defendant since the basis for those prayers rested on her claim of her interpretation of the provision in question.
The court will, however, find that expenses include living expenses, travel expenses to and from the school as well as tuition and books and materials required by the courses the child is taking. However, so long as the defendant is receiving child support, she is responsible for the expenses of the child when he or she comes home and the provision of his or her usual clothing and toiletries.
It is so ordered.
MARGARET C. DRISCOLL, STATE TRIAL REFEREE